UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA BROWN,

                Plaintiff,

v.

REED WHITE AND ASSOCIATES, LLC,
CRYSTAL DAWN PATTERSON,
MARY ANN DOW and ROBERT COVINGTON,

                Defendants.

_____/

COMPLAINT

## I.    Introduction

1.    This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Collection

Practices Act ("MCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational Code ("MOC")

M.C.L. § 339.901 *et seq.*

2.    Defendants, along with other entities and individuals to be identified in discovery,

are involved in a fraudulent and ongoing scheme whereby they have conspired to use false

representations and threats to coerce the payment of money from consumers across the country

who allegedly have failed to repay payday loans.  This scheme, operated by defendants as well as

many other entities located in and around Buffalo, New York and Atlanta, Georgia, is based on

the use of a script, sometimes known as "The Shakedown" or "The Shake," that includes

variations of the following:  The caller calls from a blocked number or uses a telephone number

1

with the consumer's area code, pretends to be a local process server, states to the consumer that "charges" have been filed against the consumer for "breach of contract" or "defrauding a financial institution" and represents that the caller is attempting to locate and serve the consumer with a summons and complaint that has been filed in court against the consumer.  The caller suggests that the charges might not be pursued if the consumer calls a toll free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm).  Usually, the threatening messages are left indiscriminately (and unlawfully) with the consumer's relatives, employer and other third parties, in order to increase the likelihood of a response.  When the consumer responds to the call, the collector (often posing as an attorney or paralegal) accuses the consumer of misdeed, makes false threats of pending litigation (and sometimes prosecution), and demands payment of the alleged debt.  Of course, no lawsuit has been filed.  Often times the debt is time-barred.  Often times, the consumer's personal, financial and account information will have been stolen and will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account.  Often times, the loan has been repaid and there is no debt owed.  When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.     The use of these unlawful debt collection practices is epidemic.  See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt

2

collection entities defendants. See also the complaint filed by the United States of America against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and violated the FDCPA and other laws, through a payday loan collection scheme that is indistinguishable from the ongoing scheme being perpetrated by the defendants a alleged in this complaint. The United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every state, and the Better Business Bureau all have issued press releases that warn consumers about this ongoing scam.

## II.    Jurisdiction

4.     This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

## III.    Parties

5.     Plaintiff Patricia Brown is an adult, natural person residing in Kent County, Michigan. Ms. Brown is a "consumer" and "person" as the terms are defined and used in the FDCPA. Ms. Brown is a "consumer," "debtor" and "person" as the terms are defined and used in the MCPA and MOC.

6.     Defendant Reed White and Associates, LLC ("RWA") is an active Georgia limited liability company, doing business from leased office space located at 3180 Presidential

Drive, Suite E, Atlanta, Georgia 30340-3900.  RWA was organized on February 19, 2013 by

defendants Crystal Dawn Patterson and Mary Ann Dow, and non-party Sarina Cosby, also known

as Sarina Jean Heard, also known as Sarina J. Pickett.  The entity initially was named  Reed

Jones White And Associates, LLC.  On April 23, 2013, RWA filed an amendment to its articles

of organization, deleting Sarina Cosby as a member and changing its name to Reed White and

Associates, LLC.  RWA has represented multiple times to the State of Georgia that its "Principal

Office Address" is located at "2274 Salem Road, Suite 102-224, Conyers, Georgia 30013."

However, that address is nothing more than a private mail box (PMB No. 224) rented by

defendants at a PostNet International Franchise Corporation store.  The registered agent for RWA

is defendant Crystal Dawn Patterson.  According to the RWA internet website

(www.reedwhiteandassociates.com), RWA "is a full service credit recovery agency for all of

your nationwide consumer debt collection. We perform effective skip tracing, impact your

debtors credit history and do effective debtor contact follow up."  The Atlanta Better Business

Bureau, on a scale of A+ to F, has given RWA a rating of "F."  RWA uses various telephone

numbers to collect debts, including 209-275-1207, 210-762-6590, 281-738-1887, 316-215-6523,

404-445-2822, 404-445-2833, 470-226-1675, 614-347-1790, 718-305-4137, 786-288-3088 and

877-283-5481.  RWA also uses telephone number 214-207-9300, which is answered as "the

attorney's office at Reed White And Associates."  RWA uses interstate commerce and the mails

in a business the principal purpose of which is the collection of debts.  RWA regularly collects or

attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due

another.  RWA is a "debt collector" as the term is defined and used in the FDCPA.  RWA is a

"regulated person" as the term is defined and used in the MCPA.  Alternatively, RWA is a

"collection agency" and "licensee" as the terms are defined and used in MOC.

4

7.     During all times pertinent hereto, RWA directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Brown that are described in this complaint.

8.     Defendant Crystal Dawn Patterson is an adult, natural person, age 48, purportedly residing at 1574 Callaway Loop, Conyers, Georgia 30012-3670.  Ms. Patterson uses telephone number 678-895-7902.  Ms. Patterson uses an email address of cpatterson_27@yahoo.com. Ms. Patterson is an owner, officer, member, manager, employee and agent of RWA.  Ms. Patterson uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Ms. Patterson regularly collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due another.  Ms. Patterson is a "debt collector" as the term is defined and used in the FDCPA.  Ms. Patterson is a "regulated person" as the term is defined and used in the MCPA.  Alternatively, Ms. Patterson is a "collection agency" and "licensee" as the terms are defined and used in MOC.

9.     In 1997, Ms. Patterson was booked in Dekalb County, Georgia with a felony charge for credit card fraud.  On February 9, 2011, Ms. Patterson was incarcerated in the Rockdale County, Georgia jail for purportedly driving while her license was suspended/revoked and for having no proof of insurance.

10.     During all times pertinent hereto, Ms. Patterson (a) created the collection policies and procedures used by RWA, and its employees and/or agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of RWA, (c) oversaw the application of the collection policies and procedures used by RWA, and its employees and/or agents, (d) drafted, created, approved and ratified the tactics and

scripts used by RWA, and its employees and/or agents collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Brown as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by RWA, and its employees and/or agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by RWA, and its employees and/or agents in attempts to collect an alleged debt from Ms. Brown as alleged in this complaint.

11.     During all times pertinent hereto, Ms. Patterson directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Brown that are described in this complaint.

12.     Defendant Mary Ann Dow, also known as Mary Ann Covington, also known as Mary Ann Covington-Dow, is an adult, natural person, age 46, purportedly residing at 135 Wyndmont Way, Covington, Georgia 30014-7900.  Ms. Dow is the sister of defendant Robert Covington.  Ms. Dow is an owner, officer, member, manager, employee and agent of RWA.  Ms. Dow uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Ms. Dow regularly collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due another.  Ms. Dow is a "debt collector" as the term is defined and used in the FDCPA.  Ms. Dow is a "regulated person" as the term is defined and used in the MCPA.  Alternatively, Ms. Dow is a "collection agency" and "licensee" as the terms are defined and used in MOC.

13.     During all times pertinent hereto, Ms. Dow (a) created the collection policies and procedures used by RWA, and its employees and/or agents, in connection with their common

efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection

operations of RWA, (c) oversaw the application of the collection policies and procedures used by

RWA, and its employees and/or agents, (d) drafted, created, approved and ratified the tactics and

scripts used by RWA, and its employees and/or agents collect debts from consumers, including

the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Brown as

alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used

by RWA, and its employees and/or agents in connection with their common efforts to collect

consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful

debt collection practices used by RWA, and its employees and/or agents in attempts to collect an

alleged debt from Ms. Brown as alleged in this complaint.

14.     During all times pertinent hereto, Ms. Dow directly and indirectly participated in

the unlawful debt collection practices to collect an alleged debt from Ms. Brown that are

described in this complaint.

15.     Defendant Robert Covington, also known as Robert J. Covington, is an adult,

natural person, age 42, purportedly residing at 6140 Green Street, S.E., Covington, Georgia

30014-3901.  Mr. Covington is the brother of defendant Mary Ann Dow.  Mr. Covington is a

manager, employee and agent of RWA.  Mr. Covington uses interstate commerce and the mails

in a business the principal purpose of which is the collection of debts.  Mr. Covington regularly

collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be

owed or due another.  Mr. Covington is a "debt collector" as the term is defined and used in the

FDCPA.  Mr. Covington is a "regulated person" as the term is defined and used in the MCPA.

Alternatively, Mr. Covington is a "collection agency" and "licensee" as the terms are defined and

used in MOC.

16.     On April 1, 2014, Mr. Covington was released from incarceration by the Department of Corrections for the State of New Jersey, SBI Number 000832332B. It is not known whether Mr. Covington currently is on parole.

17.     During all times pertinent hereto, Mr. Covington (a) created the collection policies and procedures used by RWA, and its employees and/or agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of RWA, (c) oversaw the application of the collection policies and procedures used by RWA, and its employees and/or agents, (d) drafted, created, approved and ratified the tactics and scripts used by RWA, and its employees and/or agents collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Brown as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by RWA, and its employees and/or agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by RWA, and its employees and/or agents in attempts to collect an alleged debt from Ms. Brown as alleged in this complaint.

18.     During all times pertinent hereto, Mr. Covington directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Brown that are described in this complaint.

19.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including

the training and managing of employees, reviewing or supervising the review of accounts,

materially participating in the activities of the company, supervising collection activities,

overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for

the reason that each such individual is himself a "debt collector" within the statutory definition,

namely, each is a "person" in a business, "the principal purpose of which is the collection of any

debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See Kistner v. Law Offices of*

*Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth*

*Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.    Facts

20.    On or about May 9, 2012, plaintiff Patricia Brown borrowed money from Allied

Check Cashing Michigan LLC, doing business as Allied Cash Advance ("Allied"), and located at

2440 28th Street, S.E., Grand Rapids, Michigan 49512.  Ms. Brown borrowed and used the

money for personal, family and household purposes.  Ms. Brown borrowed the money in what is

commonly called a "payday loan," at an annual interest rate that exceeded 300 percent.  Allied

assigned to the transaction an account number of 37150180.  The transaction obligated Ms.

Brown to repay Allied the sum of $312.83.

21.    Ms. Brown was unable to repay her debt to Allied.

22.    Allied charged off the account and related debt.

23.    On December 20, 2012, Allied sold and transferred the account to an entity named

National Credit Adjusters, L.L.C. ("NCA").

24.    On December 30, 2012, NCA placed the account for collection with an entity

named M. Callaghan & Assoc., LLC ("Callaghan"). Callaghan was unable to collect the debt. On April 3, 2013, Callaghan was required to return the account to NCA.

25.     On May 8, 2013, NCA placed the account for collection with a second entity named JDS Recovery L.L.C. ("JDS"). JDS was unable to collect the debt. On September 10, 2013, JDS was required to return the account to NCA.

26.     NCA has never placed the account for collection with any other entity. NCA has never sold the account to any other entity. NCA remained the owner of the account. In 2013, NCA agreed that Ms. Brown owed no money to NCA or to any other entity in connection with the account. NCA agreed that the account and related debt were satisfied.

27.     Despite the foregoing, and somewhere along the way, Ms. Brown's account information was stolen and has been sold or otherwise transferred multiple times to various entities, which have repeatedly and unlawfully contacted and criminally threatened Ms. Brown in connection with an account the entities have no right to collect in efforts to coerce Ms. Brown to pay money she does not owe. Defendants were among the various entities that obtained Ms. Brown's stolen account information. Defendants obtained Ms. Brown account information, knowing that the information had been stolen.

28.     On or about August 27, 2014 at approximately 1:49 p.m., defendants placed a telephone call to Ms. Brown's cellular telephone in connection with efforts to collect the alleged debt. The call originated from telephone number 786-288-3088. Defendants left a pre-recorded message on Ms. Brown's voice mail, stating as follows: "This call is concerning a returned item from your bank. The call needs to be returned to 404-445-2883."

29.     On or about September 19, 2014, defendants placed a telephone call to Ms.

Brown's cellular telephone in connection with efforts to collect the alleged debt. The call originated from telephone number 786-288-3088. Defendants left a pre-recorded message on Ms. Brown's voice mail, stating as follows: "This call is concerning a returned item from your bank. The call needs to be returned to 404-445-2883."

30.     On or about October 9, 2014 at approximately 11:20 a.m., defendants placed a telephone call to Ms. Brown's cellular telephone in connection with efforts to collect the alleged debt. The call originated from telephone number 281-738-1887. Defendants left a pre-recorded message on Ms. Brown's voice mail, stating as follows: "This call is concerning a returned item from your bank. The call needs to be returned to 404-445-2883."

31.     On October 22, 2014, Ms. Brown placed a call to defendants at telephone number 404-445-2883. The call was answered by a pre-recorded greeting stating, "Thank you for calling Reed White And Associates." The call was then answered by defendants' employee and agent, who identified herself as Jessica Stone. In the ensuing conversation, defendants' employee and agent made the following representations to Ms. Brown:

(a)     "I'm calling from the office of Reed White And Associates."

(b)     "This is a mediation firm."

(c)     On May 9, 2012, Ms. Brown took out a payday loan from Allied Cash Advance.

(d)     Ms. Brown failed to repay the loan in the amount of $562.83.

(e)     On August 31, 2012, Allied Cash Advance charged off the account.

(f)     Reed White And Associates now owns the account.

(g)     The account balance now owed is $1,562.83.

11

(h)     If Ms. Brown did not agree to pay money to Reed White And Associates, then "we will forward it out to Kent County" and "a warrant application will be in process when we do forward it out."

(i)     Reed White And Associates would be applying for a warrant for the arrest of Ms. Brown "because you have not paid these people in two years."

Defendants' employee and agent then stated that the call would be transferred to a supervisor to determine whether defendants would be willing to settle for less than $1,562.83.  After placing Ms. Brown on hold for several minutes, the call was abruptly terminated.

32.     On October 22, 2014, Defendants' employee and agent called Ms. Brown's cellular telephone and apologized for the prior call being terminated.  Defendants' employee and agent stated that defendants would agree to settle the alleged debt with Ms. Brown to pay defendants the sum of $1,172.12, in six monthly payments of $195.35 each.  Ms. Brown stated that she wanted defendants to put the payment demand in writing.  Defendants' employee and agent stated that defendants would email the payment demand to Ms. Brown.

33.     On October 22, 2014, Ms. Brown received by email from defendants, a letter demanding that Ms. Brown pay $1,172.12 to RWA in satisfaction of the alleged debt.

34.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

35.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

36.     The FDCPA states that it is unlawful for a debt collector to place a telephone call

without meaningful disclosure of the caller's identity. 15 U.S.C. § 1692d(6).

37. The FDCPA states that it is unlawful for a debt collector to make any false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State. 15 U.S.C. § 1692e(1).

38. The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A).

39. The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt. 15 U.S.C. § 1692e(2)(B).

40. The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney. 15 U.S.C. § 1692e(3).

41. The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action. 15 U.S.C. § 1692e(4).

42. The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5).

43. The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to

lose any claim or defense to the payment of the debt.  15 U.S.C. § 1692e(6)(A).

44.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

45.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

46.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

47.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

48.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

49.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

50.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

51.     The FDCPA states that it is unlawful for a debt collector to use unfair or

14

unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

52.     The FDCPA states that it is unlawful for a debt collector to collect any amount

unless such amount is expressly authorized by the agreement creating the debt or permitted by

law.  15 U.S.C. § 1692f(1).

53.     Defendants and their employees and/or agents have violated the FDCPA, 15

U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B),

(7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

54.     Defendants and their employees and/or agents falsely accused Ms. Brown of

committing a crime.  Ms. Brown did not commit a crime under Michigan law because the

Michigan Deferred Presentment Service Transactions Act, which regulates payday lending in

Michigan, expressly states that the borrower in a payday loan transaction "is not subject to any

criminal penalty in the event the drawer's check is dishonored."  M.C.L. § 487.2158(4).

55.     Morever, M.C.L. § 750.213 states in pertinent part:

Sec. 213.  MALICIOUS THREATS TO EXTORT MONEY – Any person who shall,

either orally or by a written or printed communication, maliciously threaten to accuse

another of any crime or offense . . .  with intent to extort money or any pecuniary

advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the

state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is

not made.  *People v. Maranian*, 359 Mich. 361 (1960).

56.     Defendants and their employees and/or agents attempted to criminally extort

money from Ms. Brown and violated M.C.L. § 750.213.

15

57.     The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

58.     Defendants failed to provide Ms. Brown with the information it was required to provide by the FDCPA, 15 U.S.C. § 1692g(a) and thereby violated the FDCPA.

59.     Defendant and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, yet to be identified in discovery, are engaged in a criminal organization and scheme, through which they directly and indirectly conspire to purchase and collect delinquent payday loans, as well as to collect money in connection with accounts they do not own or on which no money is owed, by using the above-described debt collection practices, in violation of the FDCPA (and various state laws, including Michigan law), and that include the use of scripted threats of faked litigation and criminal extortion, and that include demands for payments in amounts that exceeded the amount expressly authorized by the agreement creating the debt or permitted by law.   Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, have used the same script and same unlawful, criminal tactics, to collect or attempt to collect money from more than one thousand persons.  The criminal enterprise remains active and ongoing.

60.     Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

61.     Defendants and their employees, managers, owners, agents, attorneys, affiliates

16

and co-conspirators have intentionally and wilfully violated the FDCPA, MCPA and MOC.

62.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

63.    Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

64.    As an actual and proximate result of the acts and omissions of defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by jury and at trial.

## V.    Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

65.    Plaintiff incorporates the foregoing paragraphs by reference.

66.    Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)    Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with

the collection of a debt;

b)      Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)      Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)      Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

## Count 2– Michigan Collection Practices Act

67.      Plaintiff incorporates the foregoing paragraphs by reference.

68.      Each defendant has violated the MCPA.  Each defendant's violations of the MCPA include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e)      Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

g)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.257(2);

b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)      Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 3 – Michigan Occupational Code

69.      Plaintiff incorporates the foregoing paragraphs by reference.

70.      Each defendant has violated the MOC.  Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a

19

misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)      Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

g)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

h)      Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

## Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: December 29, 2014                    /s/ Phillip C. Rogers
                                            Phillip C. Rogers (P34356)
                                            Attorney for Plaintiff
                                            40 Pearl Street, N.W., Suite 336
                                            Grand Rapids, Michigan 49503-3026
                                            (616) 776-1176
                                            ConsumerLawyer@aol.com